# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT ALEXANDER WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> DIRKSE, *et al.*, <br><br> Defendants. | Case No. 1:21-cv-00047-BAM (PC) <br><br> ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE <br><br> FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS <br><br> (ECF No. 8) <br><br> **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Scott Alexander Williams ("Plaintiff") is a county jail inmate proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint was screened, and Plaintiff was granted leave to amend. Plaintiff's first amended complaint, filed on May 3, 2021, is currently before the Court for screening. (Doc. 8.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Stanislaus County Public Safety Center, Modesto California, where the events alleged in the complaint occurred. Plaintiff's amended complaint is for a class action. Plaintiff is a pretrial detainee. Plaintiff names the following defendants: (1) Jeff Dirkse, Sheriff, (2) Bill Duncan, Captain, (3) Scott Houston, Facilities Captain, (4) Maria Munoz, Facilities Lieutenant, (5) Joe Crabtree, Operations Sergeant, (6) Anthony Elliot, Operations Sergeant, (7) Stanislaus Public Safety Center ("PSC"), (8) Stanislaus County Sheriff's Office, (9) Stanislaus County Board of Supervisors, (10) Brigit Fladager, District Attorney, and (11) Gavin Newsom, Governor. Each Defendant is sued individually and in his/her official capacity.

Plaintiff asserts claims under the First, Eighth and Fourteenth Amendments. Plaintiff is currently housed in Administrative Segregation since the end of July 2020. He was housed before then in Maximum Security since his arrest on May 11, 2019. He has been in solitary confinement since his arrest. He suffers from post-traumatic stress disorder, traumatic brain injuries, severe anxiety, and multiple physical injuries.

2

**Solitary confinement**

Plaintiff has been subjected to harsh, prolonged an undue isolation and sleep deprivation. Every day, Defendants lock up hundreds of people in solitary confinement for 44 to 57 hours at a time with only 3 to 6 hours of yard, spaced out over 7 days. (Doc. 8 ¶29.)

Plaintiff alleges that Defendants worsen the condition by waking up plaintiff in the middle of the night at unpredictable times to deliver mail, interrupting Plaintiff's sleep schedule causing Plaintiff sleep deprivation and denying a minimal amount of nightly sleep. The isolation coupled with sleep deprivation places Plaintiff at serious risk of physical and psychological harm.

Plaintiff alleges that "Defendants" policies allow only 3 out of cell time in a 7-day period and that often even that amount of out of cell time is not allowed. (Doc. 8 ¶35.) Plaintiff alleges that up to 24 individuals are subjected to solitary confinement conditions in the various pods and housing facility (K-1 through K-6; L-1 through L-6; B-max; B-temp; B-mental). K-1 through K-6 receive 4-house of yard every other day. L-1 through L-5 receive 1 hour of yard every other day, one cell at a time. L-6 receives up to 4 hours of yard every other day. The remaining B-max; B-temp; B-mental, get up to 2 hours of yard every other day. Plaintiff provides allegations of the number of outside visits depending on housing assignment. (Doc. 8 ¶46-48.) Plaintiff describes allowance of showers and times for programming. (Doc. 8 ¶49-50.)

Plaintiff alleges "defendants are aware of the harm caused by its use of excessive, harsh and prolonged isolation." Defendants are aware that individuals are confined to their locked cells for well over 22 hour per day and remain locked up for months and years. Solitary confinements have severe mental health effects, such as anxiety, withdrawal, hallucinations and cause serious physical harm. (Doc. 8 ¶52-52.) Isolation is particularly harmful to those with disabilities who are sensitive to psychological stressors and emotional distress. Despite full knowledge of the harm, Defendants place many of these individuals such as Plaintiff in solitary confinement for extended periods.

**COVID**

Defendants do not conduct an adequate assessment before placing a person in restrictive housing to determine if such housing is contraindicated. (Doc. 8 ¶55.) Plaintiff has regularly

3

complained to staff members, orally and in writing about the conditions in restrictive housing units and the damaging impact.

Defendants lockdown policy due to COVID-19 is ineffective and caused an outbreak of cases. In April 2020, Defendants implemented policies such as opening "quarantine units" for new arrivals, and other precautions, such as face masks and testing staff daily, and reduced its population. The policies are ineffective and have led to multiple outbreaks and lockdowns. (Doc. 8 ¶60.) There is a 10-day quarantine period with 5 days spent in the first stage and the second stage where individuals are transferred to permanent housing. Persons are not tested and are provided a cloth facemask and some sanitizing wipes.

In October 2020, a large COVID-19 outbreak occurred from new arrivals. Still no regular testing of incarcerated person happened, only of staff. (Doc. 8 ¶61.) Those in quarantine or lockdown units are not kept separate, for movement like to court. Movement of individuals are not socially distant. Everyone who has court is loaded into a bus and moved to court. The buses are not disinfected and multiple different units are transferred together. (Doc. 8 ¶66.) Defendants do not provide disinfectant wipes and do not force staff to exercise proper safety measures such as wearing masks, washing hands or social distancing.

On November 30, 2020, defendants put the entire facility on lockdown due to multiple COVID 19 outbreaks. Plaintiff was in ad-seg Unit L-1, which is completely segregated from all other units and inmates except for his cellmate and staff. (Doc. 8 ¶69.) The lockdown was done without prior notice and no testing was done to see if the individuals in Unit L-1 were infected and necessary to lockdown. It exceeds state maximum of 14 days and went on for 21 days. (11/30/2020-12/20/2020) Plaintiff was without access to telephones to communicate with his attorney or family, no access to visits or outside recreation or fresh air.

During this time, court appearances continued and pretrial detainees were mixed with new arrivals in quarantine units. About 10 days into the lockdown, inmates received COVID-19 tests and when multiple inmates tested positive, they were transferred out of Unit L-1 to the medical unit. The policies, practices and lack of enforcement by the Defendants directly caused multiple outbreaks and lockdowns and inmates were hospitalized. The lockdowns made already harsh and

4

debilitating conditions worse.

Plaintiff alleges the lockdowns worsened his underlying medical conditions and caused anxiety and panic attacks, among other problems. (Doc. 8 ¶74.) The medical staff provided no help when contacted regarding the lockdown except to tell us it would be over soon. Plaintiff alleges the lockdown was not for a valid penological or safety concern.

**Mail Policies**

Plaintiff alleges that the mail policies and practices are inconsistent which results in frequent loss of mail, and delayed delivery which causes loss of sleep. The defendants' mail delivery time is at 12:00 am. It denies Plaintiff the ability to receive a minimum level of nightly sleep. The time of delivery can vary from 10:00 pm to 5:00 am and you must be awake to receive your mail to avoid mis-delivery. (Doc. 8 ¶78.) The delivery policies and practices differ from deputy to deputy. When mail is delivered, they wake you up and check your wristband to make sure you are the person named in the mail and sometimes they just slide it under the door, which results in loss of books and magazines and legal mail. This policy furthered the debilitating effects of the lockdown, with increase in anxiety, mood swings. (Doc. 8 ¶80.)

**Responsibility of Defendants**

Defendant Stanislaus County Board of Supervisors is responsible for the oversight of all County government entities. The Stanislaus County Sheriff's Office and the Stanislaus County Adult Detention Center are directly overseen by Defendant Stanislaus County Board of Supervisors. The Board of Supervisors were involved or should be involved in the creation and approval and oversight of the policies and practices of the Stanislaus County Adult Detention Center, including policies for preventing and managing COVID-19 outbreaks. (Doc. 8 ¶83.)

The Defendant Stanislaus Sheriffs Office runs the Stanislaus County Adult Detention Center and makes reports to the Board of Supervisors. Defendant Jeff Dirske is the Sheriff and in charge of running the defendant Sheriffs office. Defendant Bill Duncan, Scott Houston, Munoz, Crabtree, and Anthony Elliot are employed as deputies by the Stanislaus County Sheriffs office and worked at the Adult Detention Center. The Sheriffs Office was involved or should be involved in the creation, approval and oversight of the policies and practices of the Adult

5

Detention Center and for the policies and practices for preventing and managing COVID-19 outbreaks and for the lockdowns and mail policies at the Adult Detention Center.

The Adult Detention Center is responsible for the protection safety and wellbeing of those in its care and was where Plaintiff was housed. The Adult Detention Center makes reports to the Board of Supervisors, the Sheriffs Office and Defendant Jeff Dirkse. The Adult Detention Center employed, through the Sheriffs office, defendant Bill Duncan, Scott Houston, Maria Munoz, Anthony Elliot, Joe Crabtree. The Adult Detention Center should have been involved in the creation, approval and oversight of the policies and a practices for preventing and managing COVID-19 outbreaks.

Defendant Bill Duncan as the facility captain of the Adult Detention Center until January 2021. Defendant Duncan makes or should make regular reports to Defendant Jeff Dirkse and other defendants. Defendant Duncan was involved or should have been involved in the creation, approval and oversight of policies and practices of preventing and managing outbreaks of COVID-19, for the lock downs, and for mail policies and practices. (Doc. 8 ¶87.)

Defendant Scott Houston was the facility lieutenant of the Adult Detention Center until January 2021. Defendant Houston makes or should make regular reports to Defendant Jeff Dirkse and other defendants. Defendant Houston was involved or should have been involved in the creation, approval and oversight of policies and practices of preventing and managing outbreaks of COVID-19, for the lock downs, and for mail policies and practices. (Doc. 8 ¶88.)

Defendant Anthony Elliot was the operations sergeant of the Adult Detention Center. Defendant Elliot makes or should make regular reports to Defendant Jeff Dirkse and other defendants. Defendant Elliot was involved or should have been involved in the creation, approval and oversight of policies and practices of preventing and managing outbreaks of COVID-19, for the lock downs, and for mail policies and practices. (Doc. 8 ¶89.)

Defendant Maria Munoz was the facility lieutenant as of January 2021 of the Adult Detention Center. Defendant Munoz makes or should make regular reports to Defendant Jeff Dirkse and other defendants. Defendant Munoz was involved or should have been involved in the creation, approval and oversight of policies and practices of preventing and managing

outbreaks of COVID-19, for the lock downs, and for mail policies and practices. (Doc. 8 ¶90.)

Defendant Joe Crabtree was the facility sergeant as of January 2021 of the Adult Detention Center. Defendant Crabtree makes or should make regular reports to Defendant Jeff Dirkse and other defendants. Defendant Crabtree was involved or should have been involved in the creation, approval and oversight of policies and practices of preventing and managing outbreaks of COVID-19, for the lock downs, and for mail policies and practices. (Doc. 8 ¶91.)

Defendant Bridgit Fladager is the District Attorney of Stanislaus County and makes reports to the County Board of Supervisors. Defendant Fladager represents the people of the state of California and should be responsible for overseeing and investigating the Adult Detention center and the Sheriffs office to ensure policies conform with federal law, rules and regulations and for overseeing the creation, approval and oversight of policies and practices of preventing and managing outbreaks of COVID-19, for the lock downs, and for mail policies and practices. (Doc. 8 ¶92.)

Defendant Governor Newsom is the Governor of the State of California and should receive regular reports from defendant regarding operation of the Adult detention center. The Governor is or should be responsible for the creation approval and oversight of the policies and practices of the Adult Detention Center of preventing and managing outbreaks of COVID-19, for the lock downs, and for mail policies and practices. (Doc. 8 ¶93.)

Plaintiff alleges "class action allegations," but alleges he brings this action on behalf of "himself."[1] (Doc. 8 ¶95.) Plaintiff alleges he is at risk from the following policies:

a. Failure to provide basic human needs such as PPE, physical exercise, fresh air, normal human contact, environmental stimulation, among other things;

b. Failure to provide the minimum amount of nightly sleep free from interruptions and disturbances;

c. Failure to deliver mail, including books, newspapers, magazines, letters and legal mail;

d. "Failure to create, implement, and oversee adequate policies and practices" of the

---

[1] As explained *infra*, Plaintiff may not bring this action on behalf of other persons.

Adult Detention Center;

e. Failure to create, implement and oversee adequate policies and practices for preventing outbreaks of COVID-19;

f. Failure to create, implement and oversee adequate policies and practices for managing outbreaks of COVID-19;

g. Failure to create, implement and oversee adequate policies and practices for lockdowns;

h. Failure to create, implement and oversee adequate policies and practices to protect the safety and wellbeing of individuals housed at the Adult Detention Facility.

Plaintiff seeks declaratory relieve and a preliminary and permanent injunction. Plaintiff seeks compensatory damages and punitive damages. For injunctive relief, Plaintiff requests many specific items including, that the court order adequate medical and mental health care during lockdowns (Doc. 8 ¶117c); develop a policy regarding excessive lockdowns, sleep deprivation and mis-delivery of mail (Doc. 8 ¶117d); cease mail delivery between 10 pm and 6 am.

**III. Discussion**

**A. Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's first amended complaint is not short; it is 50 pages of allegations mostly claiming inadequate response to COVID-19. As a basic matter, the complaint does not clearly state what happened, when it happened or who was involved. It is unclear from the allegations if any of the allegations apply to Plaintiff since he seems to allege "a class action." To the extent,

Plaintiff alleges the personal impacts of mail delivery and lockdowns on him and, the Court will focus on these allegations.

Further, in the Court's screening order, Plaintiff was advised that Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. In the amended complaint, however, Plaintiff changed the nature of the allegations. Plaintiff is challenging the entirety of the COVID response by jail officials, which was not contained in his original complaint. His original complaint focused on the mail delivery policy and a lockdown. In the first amended complaint, he is challenging solitary confinement, COVID-19 response/outbreaks, and out of cell time. Plaintiff was told that he may not add new unrelated claims to the amended complaint. Plaintiff has failed to follow the Court's orders. Therefore, the Court will screen only those claims arguably presented in the original complaint. Plaintiff is free to bring the new, added unrelated claims in a separate action.

### B. Plaintiff Bringing Claims on Behalf of Others

It appears that Plaintiff may be seeking to represent all of the inmates who are in a "class action" regarding Plaintiff mail delivery and or COVID-19 response. As a pro se litigant, Plaintiff is prohibited from bringing his claims as a class action. *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) (stating that "[a] litigant appearing in propria persona has no authority to represent anyone other than himself."); *Axtle v. Cty. of Alameda*, Case No. C 12-6404 YGR, 2013 WL 5979201, at *2 (N.D. Cal. Nov. 8, 2013) (emphasizing that "pro se plaintiffs are not adequate class representatives able to fairly represent and adequately protect the interests of the class."); *accord Rood v. Lockwood*, No. 2:20-CV-00271-CKD, 2020 WL 1937397, at *2 (E.D. Cal. Apr. 22, 2020); *Salazar v. Clark*, No. 1:20-CV-01464-NONE-BAM, 2021 WL 147126, at *6 (E.D. Cal. Jan. 15, 2021), report and recommendation adopted, 2021 WL 843483 (E.D. Cal. Mar. 5, 2021) (same).

### C. County Defendants

Plaintiff names Stanislaus Public Safety Center, the Stanislaus County Sheriff's Office, Brigit Fladager of the District Attorney's office, the Stanislaus County Board of Supervisors and Governor Newsom as defendants.

Under section 1983, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). Suits brought against supervisors in their "official capacities" are actually suits against the governmental entity employing them; suits against supervisors in their individual capacities seek to hold them personally liable. *See Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S. Ct. 873, 83 L. Ed. 2d 878, 40 Fed. R. Serv. 2d 861 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

To state a claim, "[i]t is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference' " to his constitutional rights. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016), cert. denied sub nom., *Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017). The deliberate indifference standard is satisfied where a plaintiff alleges facts available to the municipality's policymakers that "put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Castro*, 833 F.3d at 1076. See *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (dismissing "*Monell* and supervisory liability claims [that] lack[ed] any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*" (quoting *Twombly*, 550 U.S. at 555)). "Since *Iqbal*, courts have repeatedly rejected conclusory *Monell* allegations that lack factual content from which one could plausibly infer *Monell* liability." *Wilson ex rel. Bevard v. City of W. Sacramento*, 2014 WL 1616450, at *2 (E.D. Cal. Apr. 22, 2014); see also, e.g., *Rodriguez v. City of Modesto*, 535 F. App'x 643, 646 (9th Cir. 2013) (affirming district court's dismissal of *Monell* claim based only on conclusory allegations and lacking factual support).

Here, Plaintiff has not provided facts to support that Stanislaus Public Safety Center, the Stanislaus County Sheriff's Office, Brigit Fladager of the District Attorney's office, the

Stanislaus County Board of Supervisors and Governor Newsom knew of, and ignored, the alleged violations committed by its employees. Plaintiff alleges that the Defendants received reports of jail operations and were involved or should be involved in the creation, approval and oversight of the policies and practices involved in Plaintiff's first amended complaint. Plaintiff's conclusory allegations are insufficient to support that these entities implemented the official policy. "A county is subject to Section 1983 liability 'if its policies, whether set by the government's lawmakers or by those whose edicts or acts ... may fairly be said to represent official policy, caused the particular constitutional violation at issue.'" *King v. Cty. of Los Angeles*, 885 F.3d 548, 558 (9th Cir. 2018) (quoting *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001)); *Rivera v. Cty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) ("[M]unicipalities, including counties and their sheriff's departments, can only be liable under § 1983 if an unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" (quoting *Monell*, 436 U.S. at 690)). There is no allegation the policy represents the official policy. Therefore, Plaintiff has failed to state a cognizable claim against Stanislaus Public Safety Center, the Stanislaus County Sheriff's Office, Brigit Fladager of the District Attorney's office, the Stanislaus County Board of Supervisors and Governor Newsom. Plaintiff has been unable to cure this deficiency.

**D. Fourteenth Amendment – Conditions of Confinement**

The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Demery v. Arpaio,* 378 F.3d 1020, 1029 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 535). During the period of detention prior to trial, a pretrial detainee may be properly subject to the conditions of the jail so long as they do not amount to punishment. *Bell*, 441 U.S. at 536–37. "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.' " *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show: (i) the defendant made an

11

intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.; Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

### 1. Mail Policy and Sleep Deprivation

Plaintiff alleges a policy for mail delivery which occurs during normal sleeping hours, resulting in continuous sleep deprivation.

The elements of a claim of unconstitutional conditions of confinement against an individual defendant constitute an "objective deliberate indifference standard," wherein the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id. at 1124-25. "[A] de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the " 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent -- something akin to reckless disregard." Id.

It is well established that "sleep undoubtedly counts as one of life's basic needs. Conditions designed to prevent sleep, then, might [in the prison context] violate the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Adequate sleep is a condition of confinement that may be challenged under the Fourteenth Amendment. The Court liberally construes the allegations in light of Plaintiff's pro se status. The allegations regarding the mail policy and sleep deprivation, unlike plaintiff's other allegations, appear to reflect specific Jail policies, customs and/or practices implemented by the individual Jail supervisors, Jeff Dirske,

12

Bill Duncan, Scott Houston, Anthony Elliot, Maria Munoz, Joe Crabtree.[2] The Court liberally construes the allegations in light of plausibility that jail administration devised the mail delivery policy, resulting in Plaintiff's harm.

Plaintiff cannot maintain an official capacity suit against the jail supervisors. Plaintiff's amended complaint names Defendants Jeff Dirske, Bill Duncan, Scott Houston, Anthony Elliot, Maria Munoz, Joe Crabtree; all defendants are named in their individual and official capacities. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). Where an action names municipal officials in their official capacity and the municipal entity itself is also being sued, "then the claims against the individuals are duplicative and should be dismissed." *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993 (N.D. Cal. 1996). Moreover, where a subdivision of a county is named, such as a sheriff's department, the appropriate defendant is the county. *Spears v. El Dorado Cty. Sheriff's Dep't*, 2019 WL 1043105, at *3 (E.D. Cal. Mar. 5, 2019) (quoting *Vance v. Cty. of Santa Clara,* 928 F. Supp. at 996) ("The County is a proper defendant in a § 1983 claim, an agency of the County is not."). See also *Brown v. Cty. of Kern*, 2008 WL 544565, at *3 (E.D. Cal. Feb. 26, 2008) ("A suit against ... Kern County Sheriff Deputies, in their official capacities is the same as a suit against the payor of any damages that may be awarded, therefore the proper defendant is Kern County."). Plaintiff cannot proceed against the jail supervisors in an official capacity suit.

---

[2] Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan,* 511 U.S. 825 (1970). To prove liability for an action or policy, the plaintiff "must... demonstrate that his deprivation resulted from an official policy or custom established by a... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## 2. COVID

Plaintiff appears to complain of lockdowns because of COVID related outbreaks. The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions are sufficient to satisfy that "conditions put the plaintiff at substantial risk of suffering serious harm. " The pertinent question in determining whether Plaintiff states a claim is whether Defendants Jeff Dirske, Bill Duncan, Scott Houston, Anthony Elliot, Maria Munoz, Joe Crabtree took reasonable available measures to abate that risk. The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." *See Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021); *See Sanford v. Eaton*, No. 1:20-CV-00792-BAM, 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021). Plaintiff details the many measures implemented in order to protect the inmates from the risks of contracting COVID-19, including quarantine, isolation, masks, testing, reducing the jail population. Even if the response has been inadequate and an outbreak occurred, Defendants have not disregarded a known risk or failed to take any steps to address the risk. *Wilson*, 961 F.3d at 843 (6th Cir. 2020). Moreover, Plaintiff fails to attribute any specific conduct to these defendants, other than that they were supervisors and what policy was constitutionally deficient. Supervisor liability is insufficient to state a cognizable claim against these defendants. The Court is not discounting Plaintiff's concerns about contracting COVID-19. His concerns are valid and significant. However, nothing in his complaint suggests that Defendants Jeff Dirske, Bill Duncan, Scott Houston, Anthony Elliot, Maria Munoz, Joe Crabtree disregarded the risk Plaintiff faced. Accordingly, he fails to state a claim against them.

**E. Mis-Delivery of Mail Tampering**

Prisoners enjoy a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). But Plaintiff's allegations of mis-delivery of mail fails to state a cognizable claim. Plaintiff alleges that delivery policies vary from deputy to deputy and Plaintiff fails to link any defendant to any purported constitutional violations.

### F. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### G. Injunctive Relief

Plaintiff seeks injunctive relief in this action. Federal courts are courts of limited jurisdiction and in considering a request for injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id.*

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly

favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

The injunctive relief Plaintiff is seeking may go beyond what would be allowed under the PLRA as it is not narrowly tailored to address the violations of the rights at issue in this action and is too intrusive. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674-75 (9th Cir. 1988). Therefore, the Court cannot grant broad requests for relief or requests based on the possibility of an injury.

### IV.     Conclusion and Recommendation

The Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, based on the above, the Court finds that Plaintiff's first amended complaint states a cognizable claim against Defendants Jeff Dirske, Bill Duncan, Scott Houston, Anthony Elliot, Maria Munoz, Joe Crabtree, in their individual capacities, for the mail delivery policy which results in continuance sleep deprivation.  Plaintiff fails to state any other cognizable claims. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's first amended complaint, filed May 3, 2021, against Defendants Jeff Dirske, Bill Duncan, Scott Houston, Anthony Elliot, Maria Munoz, Joe Crabtree, in their individual capacities, for the mail delivery policy which results in continuance sleep deprivation in violation of the Fourteenth Amendment.
2. All other claims and defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

\*\*\*

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

**(14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 2, 2021**          /s/ Barbara A. McAuliffe
                                 UNITED STATES MAGISTRATE JUDGE